UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Danny Eugene Saunders,      )  | |
| ) | C/A No.  5:15-04438-CMC-KDW |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.                                                ) | |
| ) | Report and Recommendation |
| Officer Hicks,                              ) | |
| ) | |
| Defendant.      ) | |
| ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC") proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendant violated his constitutional rights. This matter is before the court on Defendant's Motion for Summary Judgment. ECF No. 48. The court entered a *Roseboro* Order,[1] advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF No. 49. Plaintiff filed a Response in Opposition to Defendant's Motion on June 2, 2016. ECF No. 54. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation is entered for the court's review.

I.     Background

---

[1] The court entered a *"Roseboro* order*"* in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Plaintiff, Danny Eugene Saunders, is an inmate currently housed at Turbeville Correctional Institution.[2] Plaintiff alleges that on April 17, 2014, he was involved in a verbal dispute with Defendant over Defendant allegedly not giving Plaintiff his "p.m. diabetic snack" at the Florence County Detention Center. ECF No. 1 at 3. Plaintiff alleges that after the argument ended, he "went back to sleep" and woke up the next morning to the sound of his food flap slamming shut and his morning "nutria-loaf" landing on the floor of his cell. *Id.* In response, Plaintiff alleges he yelled, "don't thrown (sic) my food on the floor like no damn dog" through the door at Defendant. *Id.* Plaintiff maintains that in response, Defendant stated "he didn't mean for it to hit the floor." *Id.* Plaintiff represents that he then asked Defendant for a drink, and when Defendant gave him the drink, Plaintiff called him a "bitch." *Id.* After this interaction, Plaintiff alleges he went back to sleep and that "30 min[utes] later" he "was awakend (sic) to a large amount of pepper spray being sprayed into [his] room," and Defendant saying "who's the bitch now." *Id.*

Plaintiff alleges the pepper spray caused him to be unable to breathe, so he got down on the floor near an air vent. *Id.* He alleges that Officer James and Officer Jennings came to his aid, pulling him from the cell and cleaning up the chemicals from the walls, but Plaintiff alleges the Officers took these actions "to cover it up." *Id.* Plaintiff represents he heard Officer James say "you sprayed too much," and "you not suppose to gas him through the vent." *Id.* Plaintiff alleges that Officer Benjamin then came and took Plaintiff's statement, and three other inmates also gave written statements. *Id.* After the incident, Plaintiff alleges officers put a red dot on his door, screened his mail, would not allow him any visitors, and he later went to prison. *Id.* Plaintiff

---

[2] *See* https://public.doc.state.sc.us/scdc-public/ (last visited November 29, 2016).

"would like to get paid as much as [he] possibly can for what [he] had to go through [because Defendant] almost killed [him,] and his fellow employees and Sgt tried to cover it up." *Id.* at 5.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can

ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

III.    Analysis

    A. Eighth Amendment Right Violation[3]

Defendant argues that his use of chemical munitions was neither unlawful nor unconstitutional. ECF No. 48-1 at 7. Defendant maintains "[n]o issue of material fact exists in that regard [and] [f]or this reason, summary judgment in favor of Defendant Hicks is also appropriate on this basis. *Id.* In Response to Defendant's Motion, Plaintiff reiterates several alleged facts from his Complaint and asserts that when he was maced he was lying down inside his cell and "did not pose a threat." ECF No. 54 at 2.[4]

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d

---

[3] Defendant first argues that he was not deliberately indifferent to Plaintiff's medical treatment. ECF No. 48-1 at 4-7. The undersigned finds that, even construing the facts alleged in the Complaint liberally, Plaintiff has not set forth a § 1983 claim of deliberate indifference to his medical needs. *See* Rule 8, Federal Rules of Civil Procedure. Therefore, it is unnecessary for the undersigned to address the merits of Defendant's summary judgment argument related to this purported claim.

[4] Although not alleged in his Complaint, in Plaintiff's Response to the Motion for Summary Judgment, Plaintiff alleges he was denied medical attention after being maced. ECF No. 54 at 2. The undersigned will address this allegation as part of the excessive force claim.

653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d at 238 (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components. For the subjective component, Plaintiff must prove that Defendant assaulted and restrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

The Fourth Circuit has instructed that district courts use the following test in order to analyze the subjective component of the excessive force for Plaintiff's cause of action:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Iko v. Shreve*, 535 F.3d at 239. To establish the objective component, Plaintiff must show "that the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 2 (quoting *Wilson*, 501 U.S. at 303). When prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation regardless of how significant a plaintiff's injury may be. *Id.*; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Under the first factor, "the need for the application of force," the undersigned finds that Plaintiff admittedly called Defendant a "bitch" and asked what the "f--k" Defendant was doing.

5

ECF No. 1 at 3; ECF No. 54 at 1. Additionally, the undersigned notes that Plaintiff admits to pouring his own urine under his cell door. ECF No. 54 at 1-2. Specifically, in Response to Defendant's Motion, Plaintiff represents that upon seeing the food on the floor, he asked, "why the f--k you throw my food on the floor [?]" and Defendant laughed, saying the food had fallen on the floor. *Id.* Plaintiff again admits to calling Defendant a "bitch" after Defendant gave Plaintiff a drink. *Id.* Further, Plaintiff admits that after he drank his drink, he urinated in the cup and then "threw the urine under the door" and went to lie down. *Id.* Plaintiff alleges that during this time, Defendant was upstairs and approximately seven-to-ten minutes later, Plaintiff "awoke to the sound and smell of ma[c]e being sprayed through [his] top air vent." *Id.* Plaintiff alleges that he heard Defendant then say, "who the bitch now [?]" *Id.*

Conversely, the undersigned notes that Defendant attests to administering one three-second burst of chemical munitions when Plaintiff refused to obey his direct order to stop urinating on his cell floor. ECF No. 48-3 ¶ 3. The undersigned also notes that Defendant's incident report reflects that Plaintiff was maced when he failed to obey Defendant's direct order. *Id.* at 3. Plaintiff does not indicate whether he complied with directives in either his Complaint or his Response to Defendant's Motion. However, according to his version of the facts, Plaintiff was maced through a vent in his cell unit while he was asleep. ECF No. 1 at 3; ECF No. 54 at 1. Therefore, the undersigned is unable to determine whether there was sufficient need for application of force under prong one of *Iko* based on Plaintiff's actions or inactions during the series of events.

The undersigned cannot effectively weigh the second and third *Iko* factors—"the relationship between the need and the amount of force that was used" and "the extent of any reasonably perceived threat that the application of force was intended to quell." Here, the parties

6

have presented the court with two different versions of the facts giving rise to Defendant's use of administering force. Further, though Defendant represents that he used one three-second burst of spray, Defendant has failed to present the court with an actual amount of spray used, whether in the form of an amount of grams listed on an official incident report or otherwise. Other than Plaintiff's "Medical/Suicide Watch Log," ECF No. 48-2; Defendant's own affidavit, ECF No. 48-3; and a typed incident report, ECF No. 48-3 at 3; Defendant does not produce any other evidence to the court. There is also no undisputed evidence in the form of video evidence or otherwise. Based on the evidence presented, the undersigned is unable to weigh the second *Iko* factor. Accordingly, based on the available evidence, the amount of force that was used or the need for the force applied remains a disputed issue of fact.

Furthermore, the undersigned is unable to determine the third *Iko* factor—the extent of any reasonably perceived threat that the application of force was intended to quell. As stated in the analysis of the first factor, Plaintiff admittedly cursed at Defendant and poured urine under his cell door. However, whether Plaintiff was a threat to Defendant or anyone else when the macing occurred is unclear. Therefore, the undersigned is unable to weigh the third *Iko* factor.

The undersigned finds that the fourth *Iko* factor—"any efforts made to temper the severity of a forceful response"—is also unclear. On one hand, Plaintiff admits that approximately seven minutes after he was maced, Officer James and Officer Jennings removed him from his cell and began to decontaminate it. *See* ECF No. 1 at 3; ECF No. 54 at 1. However, Plaintiff represents that when he was maced, the water in his cell had been turned off, and he had to lie by the bottom air vent. *Id.* Additionally, Plaintiff represents that he sought medical attention after he was maced because his "chest was burning and [he] could barely breath [but] they refused tellin (sic) [him he] was 'high risk.'" ECF No. 54 at 2. Though the evidence

Defendant presents confirms that Plaintiff's cell was decontaminated, no evidence indicates whether Plaintiff ever had access to water or whether he received medical attention following the macing. *See* ECF Nos. 48-2; 48-3. Therefore, the undersigned is also unable to weigh the fourth *Iko* factor in favor of either party.

Based on the differing accounts of the facts leading to Defendant's use of force, the undersigned is unable to recommend the district court find as a matter of law that Defendant used force in a good faith effort to maintain or restore discipline and not for the very purpose of causing harm. *See Whitley*, 475 U.S. at 320-21. In his Complaint and Response in Opposition to Summary Judgment, Plaintiff alleges that he was maced while sleeping and not while refusing to comply with Defendant's direct order. Though Defendant maintains mace was used only in response to Plaintiff's refusal to comply with a direct order, the undersigned is tasked with construing the facts in the light most favorable to Plaintiff. Here, under this standard of review, the undersigned finds there is a genuine issue of material fact as to whether Defendant's actions were excessive under the Eighth Amendment. *See e.g., Parker v. Stevenson*, 625 F. App'x 196, 199 (4th Cir. 2015) ("[I]n concluding that the record did not substantiate Parker's allegations, [the Report and Recommendation] failed to view the facts and the inferences drawn therefrom in the light most favorable to Parker."); *Brown v. Eagleton*, No. 4:14-CV-0357-BHH, 2015 WL 5781504, at *2 (D.S.C. Sept. 30, 2015) (where the district court declined to adopt a Report and Recommendation because "it [was] far from clear that the plaintiff's actions threatened prison officials or other inmates [and using] *Whitley* factors, the Court f[ound] that there [was] a genuine issue of fact as to whether the defendant's actions in spraying the plaintiff with mace were 'applied in a good faith effort to maintain or restore discipline.'"); *Wright v. Mack*, No. CIV.A. 5:12-02232, 2013 WL 3946286, at *5 (D.S.C. July 31, 2013) (where the district court

adopted an R&R finding there was "a genuine issue of fact as to whether Defendant Mack's actions in spraying Plaintiff with chemical munitions for purportedly refusing to stop yelling and kicking his cell door were 'applied in a good-faith effort to maintain or restore discipline.'"). Based on the genuine issues of material fact in this case, the undersigned recommends Defendant's Motion for Summary Judgment be denied on Plaintiff's excessive force claim. *See Mann v. Failey*, 578 F. App'x 267, 275 (4th Cir. 2014) (holding a plaintiff's presentation of "necessary briefs, affidavits, and corroborative evidence to support his claims" created a jury issue and "disputes of credibility are reserved for a fact finder").

      B.  Qualified Immunity

Defendant asserts he is entitled to qualified immunity on Plaintiff's claims. ECF No. 48-1 at 12-14. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a

9

broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id*. (citations and internal quotation omitted).

The record before the court does not indisputably show that Defendant performed the discretionary functions of his respective official duties in an objectively reasonable fashion. Viewed in the light most favorable to Plaintiff, Defendant could have transgressed Plaintiff's constitutional rights. Thus, the undersigned recommends Defendant not be granted qualified immunity.

### C.  Official Capacity

Defendant maintains he is not subject to suit in his official capacity. ECF No. 48-1 at 11-12.  On this sole point, the undersigned agrees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

Because Defendant was an agent or employee of the State of South Carolina when acting in his official capacity, he is not a "person" within the meaning of 42 U.S.C. § 1983. *Will v.*

*Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendant, in his official capacity, is immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant in his official capacity be dismissed.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment, ECF No. 48, be granted only to the extent Defendant seeks dismissal of claims against him in his official capacity. The undersigned recommends Defendant's Motion, ECF No. 48, otherwise be denied.

IT IS SO RECOMMENDED.

December 2, 2016                                          Kaymani D. West
Florence, South Carolina                                  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**